# In the United States Court of Federal Claims

No. 26-191
(Filed Under Seal: June 1, 2026)
Reissued: June 17, 2026[*]

|  |  |
|---|---|
| MITCHELL CONSULTING SERVICES GROUP INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) ) |
| Defendant, | ) ) |
| v. | ) ) ) |
| DEFENSE TESTING & EVALUATION SUPPORT SERVICES JV, LLC., | ) ) ) |
| Defendant-Intervenor. | ) |

*Gregory Steven Jacobs* and *Daniel Petkoff*, Polsinelli PC, Washington, D.C., for plaintiff.

*James William Poirier*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington D.C., for defendant. With him on the brief were Major Bruce Nessler, Trial Attorney, United States Army Legal Services Agency, Fort Belvoir, Virginia; and Susan D. Denley, Chief Attorney, 418th Contracting Support Brigade, Fort Worth, Texas.

*Amy Laderberg O'Sullivan*, *Emily Pierce Golchini*, and *Zachary H. Schroeder*, Crowell & Moring LLP, Washington, D.C., for defendant-intervenor.

**OPINION AND ORDER**

In this post-award bid protest, plaintiff Mitchell Consulting Services Group, Inc. ("MCSG") challenges the Department of the Army's (the "Army" or "defendant") decision to award a contract for Test and Evaluation Technical Support Services to defendant-intervenor Defense Testing & Evaluation Support Services JV, LLC ("DTESS"). *See* Complaint, ECF No. 1 at ¶ 1 [hereinafter "Compl."]. During proceedings, the Army announced that it would undertake

---

[*]     An unredacted version of this Opinion was issued under seal on June 1, 2026. *See* ECF No. 40. The Court provided the parties with the opportunity to submit proposed redactions. *See* Joint Status Report, ECF No. 47. The Court accepts all proposed redactions.

corrective action. This prompted defendant to file a motion to dismiss under Rule 12(b)(1) of the Court of Federal Claims ("RCFC") for mootness. However, MCSG amended its complaint while this motion was pending, which in effect mooted the Army's motion. Upon review, the Court hereby **DENIES** the Army's motion, ECF No. 26.

## I.    BACKGROUND

On January 3, 2023, the Army issued Solicitation No. W91151-23-R-0024 (the "Solicitation"). Compl. at ¶¶ 1, 28.[1] The Solicitation contemplated a best value tradeoff source selection method that would evaluate offers based on: (1) Mission Capability; (2) Past Performance; and (3) Cost. *Id.* at ¶ 11. Each factor would be assessed for adequacy of response, feasibility of approach, completeness, and understanding of the requirement. *Id.* at ¶ 13. Relevant to this motion, the Solicitation also included the 2018 version of Federal Acquisition Regulation ("FAR") 52.204-7, System for Award Management ("SAM").[2] *Id.* at ¶ 62 (citing 48 C.F.R. § 52.204-7 (2018)). That provision required offerors to "be registered in SAM when submitting an offer or quotation, and . . . *continue to be registered* until time of award, during performance, and through final payment." FAR 52.204-7(b)(1) (emphasis added).

Defendant awarded MCSG the contract on October 19, 2024. *Id.* at ¶ 29. In response, DTESS filed a bid protest action before the Government Accountability Office ("GAO") that challenged the Army's evaluation of both offers. *Id.* at ¶ 30. In November 2024, FAR 52.204-7 was amended and eliminated SAM's continuous registration requirement. *Id.* at ¶ 63 (citing ECF No. 1-4 at 2–3). Following an "outcome prediction conference," the Army took corrective action, but it did not update FAR 52.204-7 to reflect its current version. *Id.* at ¶¶ 30–31, 63.

On March 2, 2025, the Army issued a "conformed Solicitation" which allowed offerors to revise their proposals with respect to Cost and subfactors within Mission Capability. *Id.* at ¶ 32. In the following months, defendant evaluated revised proposals from offerors and engaged in discussions with MCSG. *Id.* at ¶ 34–35. On January 15, 2026, the Army notified MCSG that it would award DTESS the contract. *Id.* at ¶ 36. While MCSG received favorable ratings, *see id.*, the Army reasoned that DTESS's bid "offer[ed] the best value to the Government due to its ████████████████████████████████████████ *Id.* at ¶ 61.

At some point, MCSG learned that DTESS's SAM profile had an initial registration date of June 22, 2025. *Id.* at ¶ 64. This alleged registration date came after the March 22, 2023, deadline for offerors to submit their proposals. *Id.* After MCSG disclosed its finding to defendant, the Army represented that it "confirmed all offerors were registered in SAM prior to the submission of their offer." *Id.* at ¶ 65. The Army also provided a screenshot that depicted an initial registration date of February 7, 2023, and an expiration date of February 7, 2024. *Id.* According to MCSG, the Army failed to indicate whether it verified that DTESS's SAM account was continuously

---

[1]    The Court draws from MCSG's original complaint to provide a brief background. *See generally* Compl.

[2]    Among other things, SAM is a "free, centralized source for finding and bidding on U.S. government contract opportunities, awards and publishing subcontract reports." *Contracting*, SAM.Gov, https://sam.gov/contracting (last visited April 14, 2026).

2

registered from March 22, 2023, through January 15, 2026, in compliance with the 2018 standard of FAR 52.204-7(b)(1).  *Id.*

## II.  PROCEDURAL HISTORY

On February 4, 2026, MCSG filed suit in this Court.  *See generally* Compl.  Two days later, the Court granted DTESS's motion to intervene.  ECF No. 9.  At a status conference held on February 9, 2026, both parties indicated a desire to resolve this dispute without additional litigation.  Defendant then filed four unopposed motions for an enlargement of time to facilitate settlement discussions. *See* ECF Nos. 21, 22, 24, 25.  On March 4, 2026, defendant advised all stakeholders that the Army issued a notice announcing corrective action.  ECF No. 25 at 1.  In addition to "canceling the award at issue," defendant's corrective action included: (1) amending the Solicitation "to include the current version of FAR Clause 52.204-7;" and (2) performing "a revalidation of the SAM.gov registration of all offerors in the competitive range, consistent with the amended Solicitation and the revised FAR" provision.  ECF No. 26-1 at 1–2.

On March 9, 2026, defendant filed its motion to dismiss under RCFC Rule 12(b)(1) and argued that the Army's corrective action rendered MCSG's lawsuit moot.  *See generally* ECF No. 26.  While this motion sat pending before the Court, MCSG moved to amend its complaint in accordance with RCFC 15(a).  ECF No. 27.  The Court granted MCSG's motion, which later filed its amended complaint on March 26, 2026.  *See* Am. Compl., ECF No. 31 [hereinafter "Am. Compl."].  By operation of this Court's rules, MCSG's response to defendant's motion was due on April 6, 2026.  RCFC 7(b)(1).  Since MCSG failed to meet this deadline, defendant's motion now proceeds unopposed.

## III.  LEGAL STANDARDS

### A.  Justiciability And Mootness.

Article III, section 2 of the United States Constitution limits "federal judicial power to the resolution of actual 'cases' or 'controversies.'"  *Anderson v. United States*, 344 F.3d 1343, 1359 (Fed. Cir. 2003); *Flast v. Cohen*, 392 U.S. 83, 94–95 (1968).  In other words, courts retain jurisdiction over matters that affect "the legal relations of parties having adverse legal interests." *Id.* (citing *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 240–241 (1937)).  "[I]t is axiomatic that a federal court may not address the merits of a legal question not posed in an Article III case or controversy, and that a case must exist at all stages of" litigation.  *eSimplicity, Inc. v. United States*, 122 F.4th 1373, 1376 (Fed. Cir. 2024).  This Court, though an Article I court, has adopted "many justiciability precepts—including the doctrine of mootness—based on prudential grounds."  *Indus. for the Blind, Inc. v. United States*, 120 Fed. Cl. 132, 135 (2015); *see also Anderson*, 344 F.3d at 1250 n. 1; 28 U.S.C. § 2519 (empowering this Court to enter final judgment "arising out of the matters involved in the case or controversy.").

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citing *Powell v. McCormack*, 396 U.S. 486, 496 (1969)).  Issues are no longer live "[w]hen, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue[.]"  *Chapman Law Firm Co. v.*

3

*Greenleaf Constr. Co.*, 490 F.3d 934, 939 (Fed. Cir. 2007).  The moving party bears the burden of showing that an issue has been mooted.  *AccelGov, LLC v. United States*, 166 Fed. Cl. 606, 610 (2023).  Typically, a defendant's voluntary cessation of alleged wrongful behavior "does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quotations omitted).  But such exception will not apply if there is clearly no "reasonable expectation that the alleged violation will recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Chapman*, 490 F.3d at 940 (quoting *Cnty. of Los Angeles*, 440 U.S. at 631 (1979)).  Since mootness "relates to the basic dispute between the parties, not merely the relief requested," availability of other relief may quash a challenge that a case is moot.  *Intrepid v. Pollock*, 907 F.2d 1125, 1131 (Fed. Cir. 1990).

This Court "has consistently found that the cancellation of a procurement renders a protest of that procurement moot." *Square One Armoring Serv., Inc. v. United States*, 123 Fed. Cl. 309, 325 (2015) (collecting cases).  When a federal agency undertakes corrective action, the "salient question" becomes whether the corrective action "has completely and irrevocably eradicated the effects of the alleged violation." *McTech Corp. v. United States*, 105 Fed. Cl. 726, 731 (2012) (quoting *Chapman*, 490 F.3d at 940).  However, the Court may deny a motion to dismiss for mootness when "the record before the Court is devoid of evidence," and defendant provides a "nonexistent rationale" as to how corrective action would make a contractor's case moot. *AccelGov*, 166 Fed. Cl. at 611; *see also SEKRI, Inc. v. United States*, 165 Fed. Cl. 21, 36–38 (2023).  A bid protest will also not become moot if "some of the requested relief remains available." *McTech*, 105 Fed. Cl. at 731 (citations omitted).   In sum, "the government lacks carte blanche to end cases unilaterally . . . simply by calling a mulligan" in bid protest cases.  *AccelGov, LLC*, 166 Fed. Cl. at 610.

### B.  The Tucker Act And Motion To Dismiss.

The Tucker Act confers jurisdiction on this Court to hear bid protest actions.  *See* 28 U.S.C. § 1491(b)(1).  When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court will treat factual allegations in the complaint as true and will construe those allegations in the light most favorable to the plaintiff.  *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  Plaintiffs bear the burden of establishing this Court's jurisdiction by a preponderance of the evidence.  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  When a case becomes moot and no longer justiciable, Courts will dismiss an action in accordance with RCFC 12(b)(1) for lack of subject-matter jurisdiction.  *Newimar, S.A. v. United States*, 152 Fed. Cl. 521, 523 (2021); *see North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

## IV.    DISCUSSION

### A.  MCSG's Amended Complaint Supersedes Its Initial Pleading and Moots the Army's Motion to Dismiss.

In its original complaint, MCSG alleged that the Army: (1) arbitrarily and capriciously failed to disqualify DTESS's proposal due to a purported lapse in its SAM registration; (2) arbitrarily and capriciously evaluated both proposals under multiple factors; and (3) conducted an

4

"unreasonable tradeoff" between each offeror's proposal.  *See* Compl. at ¶¶ 67–98.  While defendant announced corrective action, MCSG's amended complaint renders this motion as moot.

"An amended complaint supersedes any previous complaints."  *Tender Years Learning Corp. v. United States*, 128 Fed. Cl. 265, 272 (2016); *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1364–65 (Fed. Cir. 2000); *JRS Mgmt. v. Lynch*, 621 F. App'x 978, 982 (Fed. Cir. 2015); *Smith v. United States*, 120 Fed. Cl. 455, 460 (2015) (describing the original complaint as *moot*).  In this situation, an amended complaint "becomes the operative complaint in the case, [and] it renders the original complaint of no effect."  *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017); *Easter v. D.C.*, 128 F. Supp. 3d 173, 177 (D.D.C. 2015).  Thus, the original complaint serves as "dead letter and no longer performs any function in the case."  *Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003).

The Court granted MCSG's motion to amend its complaint under RCFC 15(a)(2).  *See generally* ECF Nos. 27, 28.  MCSG's amended complaint now serves as the operative pleading, and its original complaint "no longer performs any function in this case."  *Kolling*, 347 F.3d at 16.  Accordingly, MCSG's amended complaint mooted defendant's motion to dismiss.  *Smith*, 120 Fed. Cl. at 460.

### B. MCSG's Amended Complaint Challenges the Army's Corrective Action, Not Its Underlying Evaluation of Offers, Such That This Action is Not Moot.

While filing an amended complaint ordinarily moots a pending motion to dismiss, some courts allow a defendant to "re-file the motion based on the amended pleading."  *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 103 (D.D.C. 2006); *Trading Techs. Int'l v. BGC Partners, Inc.*, No. 10 C 715, 2010 WL 3272842, at *1 (N.D. Ill. Aug. 17, 2010).  Other courts entertain a defendant's motion to dismiss when the amended complaint "fails to address the alleged defects identified in the motion to dismiss."  *Waggoner v. Shoemaker*, No. 1:21-CV-101-TBM-RPM, 2021 WL 3134910, at *1 (S.D. Miss. July 23, 2021); *Yates v. Applied Performance Techs.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002); *Alvarez v. Chaffey Cmty. Coll. Dist.*, No. EDCV 2401781 JGB (SHKX), 2025 WL 2370925, at *2 (C.D. Cal. Jan. 10, 2025); *Kruise v. United States Dep't of the Army*, No. 3:21-CV-543, 2023 WL 2673945, at *2 (M.D. Pa. Feb. 3, 2023) (subsequent history omitted).

Courts will consider a motion to dismiss in this instance to "promote[] judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient."  *Pettaway v. Nat'l Recovery Sols., LLC*, 995 F.3d 299, 303 (2d Cir. 2020).  Exercising discretion when an original and amended complaint contain the same defects avoids "exalt[ing] form over substance."  *Ellipso*, 460 F. Supp. 2d at 103.  MCSG's original and amended complaint both implicate defendant's basis for dismissal—that corrective action renders its bid protest moot.  To promote substance over form, the Court will address the justiciability of MCSG's amended complaint.[3]

---

[3]  This Court may, *sua sponte*, raise subject-matter jurisdiction at any time.  *See Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1346 (Fed. Cir. 2008); *see also* RCFC 12(h)(3) (requiring the Court to dismiss a complaint if it determines at any time that it lacks subject-matter jurisdiction).

MCSG initially pled that defendant's failure to disqualify DTESS due to an alleged lapse in its SAM registration was arbitrary and capricious. *See* Compl. at ¶¶ 67–73. In its amended complaint, MCSG asserted that the Army's decision to amend the Solicitation to include an updated version of FAR 52.204-7 as part of its corrective action "lacks a rational basis and is a violation of law." *See* Am. Compl. at ¶¶ 25–40. In this instance, MCSG now challenges the Army's corrective action instead of its evaluation of DTESS's bid.

Defendant asserted that "when DTESS followed [] instructions regarding how to update banking information on [its] SAM account," DTESS's account "was temporarily deactivated in June 2025." ECF No. 26 at 1–2 (citation and quotations omitted). According to defendant, the deactivation "created an ambiguity in [DTESS's] SAM.gov registration status." *Id.* at 2. This led to its decision to undertake corrective action, which makes MCSG's lawsuit moot. *Id.* at 2–3. By contrast, MCSG now alleges that FAR does not require defendant to update provisions in a solicitation issued after a regulation becomes amended. Am. Compl. at ¶ 33. In MCSG's opinion, the "Army had several opportunities to incorporate the updated version of FAR 52.204-7 prior to making the award to DTESS and declined to do so." *Id.* If the Army re-evaluated each offeror's SAM registration status with respect to FAR 52.204-7's 2024 standard, the Army would allegedly tailor its criteria to ensure that DTESS would receive the contract. *Id.* at ¶¶ 36–39. Here, the Army's corrective action would not "completely and irrevocably eradicate" the harm MCSG allegedly faces by using an updated FAR provision to benefit a competing offeror. *Chapman*, 490 F.3d at 940. Thus, a live dispute exists between MCSG and defendant as to whether the Army's corrective action is arbitrary and capricious. Am. Compl. at ¶ 40.

Therefore, MCSG's amended complaint is not moot such that the Court will not dismiss this matter for lack of subject-matter jurisdiction.

### C. Evaluating the Army's Decision to Undertake Corrective Action is Ripe for Review.

On the other hand, the Court will address whether defendant's corrective action makes MCSG's lawsuit unripe for review.

"Ripeness is a justiciability doctrine that prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1348 (Fed. Cir. 2015) (citations and quotations omitted). A claim becomes unripe when it depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide*, 473 U.S. 568, 581 (1985). Reviewing an action for ripeness requires a court to evaluate: "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Pernix Grp., Inc. v. United States*, 121 Fed. Cl. 592, 598 (2015) (quotations omitted) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). "[A]n agency decision is not ripe for judicial review until the allegedly offending agency has adopted a *final* decision." *Id.* (emphasis in original) (citation omitted). An agency's decision becomes final if it "marks the consummation of the agency's decision-making process," meaning "it must not be merely tentative or interlocutory," and "the action [is] one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (citations

and quotations omitted).   Hardship considers whether "the complained-of-conduct has an 'immediate and substantial impact' on the plaintiff." *Caraco Phram. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1295 (Fed. Cir. 2007).   "A sufficient risk of immediate hardship may warrant prompt adjudication." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1580–81 (Fed. Cir. 1993).

The Federal Circuit has concluded that a federal agency's intention to undertake corrective action constitutes a final decision. *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1384 (Fed. Cir. 2012).   There, defendant expressly memorialized its decision in writing which set forth a chain of "irretrievable legal consequences," including a challenge for mootness.   *Id.* Additionally, stalling litigation until the agency issued a new award would make certain claims "protest-proof," such as challenging amendments to a solicitation.   *Id.*   Other Courts have reached similar conclusions.   *See Jacobs Tech. Inc. v. United States*, 131 Fed. Cl. 430, 447 (2017); *The Centech Grp., Inc. v. United States*, 78 Fed. Cl. 496, 506 (2007); *Ceres Gulf, Inc. v. United States*, 94 Fed. Cl. 303, 317 (2010); *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 333 (2012).

In this case, the Contracting Officer informed all offerors that they "have decided to take corrective action in this procurement."   ECF No. 26-1 at 1.   This declaration puts in certain, not contingent or tentative, terms that defendant will implement its changes.   *Sys. Application*, 691 F.3d at 1384.   As part of its corrective action, defendant intends to terminate the award and revalidate each offeror's SAM registration status under FAR 52.204-7's 2024 version.   *Id.* at 1–2. While the Army has not incorporated its changes yet, its decision sets forth "irretrievable legal consequences" that act adverse to MCSG's legal interests.   *Sys. Application*, 691 F.3d at 1384.   For instance, the corrective action led to defendant filing its motion to dismiss for mootness and its future actions will add an updated regulation to the Solicitation that allegedly benefits one offeror. *See id.*   Corrective action also removes FAR 52.204-7's 2018 version from the Solicitation which MCSG believes DTESS violated and therefore should be excluded from consideration.   MCSG would suffer further hardship from being forced to recompete for a contract that now contains terms that would allegedly hinder its ability to receive the award.   *Id.* at 1384–85.

Therefore, MCSG's amended complaint, and corresponding claim, is ripe for review which grants the Court subject-matter-jurisdiction over this matter.

V.      **CONCLUSION**

For the foregoing reasons, the Court hereby **DENIES** the Army's motion to dismiss for lack of subject-matter jurisdiction, ECF No. 26.   The parties are directed to **FILE** a joint status report on or before **June 15, 2026**, that proposes redactions to this Opinion to allow the Court to file a public version of the opinion.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

7